UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| **Quintin M. Littlejohn**,<br><br>                Plaintiff,<br><br>vs.<br><br>**International Court of Justice, The Peace Palace**,<br><br>                Defendant. | C/A No. 7:07-0255-RBH-WMC<br><br><br><br>**Report and Recommendation** |

# *Background of this Case*

The plaintiff is a resident of Gaffney, South Carolina. The plaintiff is under an order of pre-filing review. *See* Graham v. Riddle, 554 F.2d 133, 134-135 & n. * (4th Cir. 1977).[1] The plaintiff was confined in the South Carolina Department of Corrections until May of 2003, when he "maxed out" his sentence for his 1982 conviction for armed robbery entered in the Court

---

[1] The order of pre-filing review was entered on July 10, 1998, by the Honorable G. Ross Anderson, Jr., United States District Judge, in Quintin Littlejohn v. William J. Clinton, President of the United States, Civil Action No. 6:98-1169-13AK. Judge Anderson's order authorizes the Clerk's Office to assign civil action numbers to the plaintiff's pleadings for docket control purposes.

1

of General Sessions for Cherokee County. Prior to his most recent current incarceration at the Cherokee County Detention Center, the plaintiff resided in Gaffney, South Carolina.[2] It can be judicially noticed that the plaintiff was confined at the Cherokee County Detention Center until the week ending January 26, 2007. *See* pleadings in Littlejohn v. Crocker, Civil Action No. 6:07-0221-RBH-WMC, which was habeas corpus action.

In the above-captioned case, the plaintiff has brought suit against the International Court of Justice and its building, the Peace Palace,[3] in The

---

[2]*See* pleadings in Quintin Littlejohn v. David Edwards Toyota; Mark Edwards; and All Agents in Active Concert, Civil Action No. 7:06-1012-RBH-WMC. This court may take judicial notice of Civil Action No. 7:06-1012-RBH-WMC. Aloe Creme Laboratories, Inc. v. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970). *See also* Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239, 1989 U.S.App. LEXIS® 16328 (4th Cir. 1989)("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'"); Mann v. Peoples First National Bank & Trust Co., 209 F.2d 570, 572 (4th Cir. 1954)(approving district court's taking judicial notice of prior suit with same parties: "We think that the judge below was correct in holding that he could take judicial notice of the proceedings had before him in the prior suit to which Mann and the Distilling Company as well as the bank were parties."); and United States v. Parker, 956 F.2d 169, 171, 1992 U.S.App. LEXIS® 1319 (8th Cir. 1992).

[3]The "Peace Palace" was paid for by funds contributed by American philanthropist Andrew Carnegie:

> Since the initial organization of the Academy had a strong French flavor, this switch may seem surprising. I attribute it primarily to the strong legacy left by Andrew Carnegie (1835-1919). I digress briefly to touch the main points of the argument. At the beginning of the 20th century, Carnegie was the richest man on the planet, having sold his steel company for $250 million, equivalent today to about $5 billion. Tired of creating wealth, he decided to spend his remaining years trying to donate it to worthy causes. World peace became one of those causes.

(continued...)

Hague, a city in The Netherlands. In the "STATEMENT OF CLAIM" portion of the complaint, the plaintiff refers to his often-used acronym: "K-DLLL (Kosovo Doctrine Littlejohn Litigation and Law)."[4] The plaintiff alleges that former President William Jefferson Clinton "stole" the plaintiff's agenda. The plaintiff also refers to his prior litigation against Hillary Rodham Clinton, who is now a United States Senator and presidential candidate; prior litigation against then-South Carolina Attorney General Charles M. Condon; his prior attempt to appeal his state court convictions for armed robbery to the International Court of Justice; and his state court litigation under Al-Shabazz

---

(...continued)

\* \* \*

> In 1904, Carnegie donated $1.5 million to a Dutch entity, the Carnegie Foundation, to build a "temple of peace" for the PCA. The stone-laying ceremony occurred during the Second Hague Peace Conference in 1907 and the building opened in 1913 with Carnegie present. In 1922, the Peace Palace also became home to the Permanent Court of International Justice and in 1923 the Hague Academy of International Law, created in 1914. Funding to support this Academy came from the Carnegie Endowment for International Peace in Washington[.]

David S. Clark, American Participation in the Development of the International Academy of Comparative Law and its First Two Hague Congresses, 54 Am. J. Comp. L. 1, 9-10 (Fall 2006).

[4]See also pleadings in Quintin Littlejohn v. Bill Clinton, et al., Civil Action No. 6:01-2285-13AK, where in the plaintiff, in response to a Special Interrogatory from this court, also explained what the acronym "K-DLLL" meant: "Kosovo Doctrine Littlejohn Litigation Law."

3

v. State, 338 S.C. 354, 527 S.E.2d 742, 1999 S.C. LEXIS® 217,[5] (2000). In his prayer for relief, the plaintiff seeks "Injunctive Relief to the extent of all the wealth of the litigation" previously filed by the plaintiff. The plaintiff also appears to be requesting that money be held in the Municipal Court for the Town of Gaffney.

# *Discussion*

Under established local procedure in this judicial district, a careful review has been made of the *pro se* pleadings and the Form AO 240 (motion to proceed *in forma pauperis*) pursuant to the procedural provisions of 28 U.S.C. § 1915. The review[6] has been conducted in light of the following precedents: Denton v. Hernandez, 504 U.S. 25, 118 L.Ed.2d 340, 112 S.Ct. 1728, 1992 U.S. LEXIS® 2689 (1992); Neitzke v. Williams, 490 U.S. 319, 324-325, 104 L.Ed.2d 338, 109 S.Ct. 1827, 1989 U.S. LEXIS® 2231 (1989); Haines v. Kerner, 404 U.S. 519 (1972); Nasim v. Warden, Maryland House

---

[5] The Lexis® Service has given the opinion on rehearing a calendar year 1999 citation, not a citation for calendar year 2000.

[6] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 (DSC), the undersigned is authorized to review such complaints for relief and submit findings and recommendations to the District Court.

of Correction, 64 F.3d 951, 1995 U.S.App. LEXIS® 26108 (4th Cir. 1995)(*en banc*), *cert. denied*, 516 U.S. 1177, 134 L.Ed.2d 219, 116 S.Ct. 1273, 1996 U.S. LEXIS® 1844 (1996); Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983); and Boyce v. Alizaduh, 595 F.2d 948 (4th Cir. 1979)(recognizing the district court's authority to conduct an initial screening of a *pro se* filing).[7] This court is required to construe *pro se* complaints and petitions liberally. Such *pro se* complaints and petitions are held to a less stringent standard than those drafted by attorneys, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied*, Leeke v. Gordon, 439 U.S. 970 (1978), and a federal district court is charged with liberally construing a complaint or petition filed by a *pro se* litigant to allow the development of a potentially meritorious case. *See* Hughes v. Rowe, 449 U.S. 5, 9-10 & n. 7 (1980)(*per curiam*); and Cruz v. Beto, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint or petition, the plaintiff's or petitioner's allegations are assumed to be true. Fine v. City of New York, 529 F.2d 70, 74 (2nd Cir. 1975). Even under this less stringent standard, the complaint is subject to summary

---

[7] Boyce has been held by some authorities to have been abrogated in part, on other grounds, by Neitzke v. Williams, 490 U.S. 319 (1989)(insofar as Neitzke establishes that a complaint that fails to state a claim, under Federal Rule of Civil Procedure 12(b)(6), does not by definition merit *sua sponte* dismissal under 28 U.S.C. § 1915(e)(2)(B)(i) [formerly 28 U.S.C. § 1915(d)], as "frivolous").

dismissal. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. <u>Weller v. Department of Social Services</u>, 901 F.2d 387, 1990 U.S.App. LEXIS® 6120 (4th Cir. 1990).

The International Court of Justice "is a [j]udicial arm of the United Nations." <u>Black's Law Dictionary</u>, (fifth edition, 1979), at page 732. The International Court of Justice

> * * * has jurisdiction to give advisory opinions on matters of law and treaty construction when requested by the General Assembly, Security Council or any international agency authorized by the General Assembly to petition for such opinion. It has jurisdiction, also, to settle legal disputes between nations when voluntarily submitted to it. Its judgments may be enforced by the Security Council. Its jurisdiction and powers are defined by statute, to which all member states of the U.N. [United Nations] are parties. Judges of such court are elected by the General Assembly and Security Council of the U.N.

*See also* Vera Gowlland-Debbas, <u>The Relationship between the International Court of Justice and the Security Council in Light of the Lockerbie Case</u>, 88 Am. J. Int'l L. 643 (October 1994)("The relationship between the International Court of Justice and the Security Council may be approached from the perspective of the United Nations Charter and the way it delimits competences between two principal UN organs and regulates the exercise

of their concurrent powers."); Taslim O. Elias, The International Court of Justice and Some Contemporary Problems (1979); Josh Briggs, Comment, Sur Place Refugee Status in the Context of Vietnamese Asylum Seekers in Hong Kong, 42 Am. U. L. Rev. 433, 457 (Winter 1993); and Gregory Gelfand, International Penal Transfer Treaties: The Case for an Unrestricted Multilateral Treaty, 64 Boston U. L. Rev. 563, 568 & n. 17 (May 1984).  The International Court of Justice is the successor to the Permanent Court of International Justice.  *See* Gowlland-Debbas, The Relationship between the International Court of Justice and the Security Council in Light of the Lockerbie Case, supra, 88 Am. J. Int'l L. at 643 n. 1 ("By contrast, the Permanent Court of International Justice, though closely related to the League of Nations, was independent of it.").

The International Court of Justice does not have jurisdiction over criminal cases and collateral attacks on convictions.  *See*, *e.g.*, Questions of Interpretation and Application of the 1971 Montreal Convention Arising from the Aerial Incident at Lockerbie (Libya v. U.K.), 1992 I.C.J. 3, 15 (1992); and Jeffrey J. Carlisle, Extradition of Governments as a Municipal Law Remedy for State-Sponsored Kidnapping, 81 Cal. L. Rev. 1541, 1547-1572 & n. 171 (December 1993).  The jurisdiction of the International Court of Justice is

limited to disputes *between nations*.  *See* United States v. Maine, 475 U.S. 89, 99 (1986), *citing* the Fisheries Case (United Kingdom v. Norway), 1951 I.C.J. 116 (1951).  *See also* Daphne Barak-Erez, Israel: The Security Barrier—Between International Law, Constitutional Law, and Domestic Judicial Review, 4 Int'l J. Const. L. 540 (July 2006)(discussing various court opinions, including ICJ advisory opinion, on construction of Israel's security barrier in Judea and Samaria).  *But see* Firew Kebede Tiba, What Caused the Multiplicity of International Courts and Tribunals, Gonz. J. Int'l L. 202 (2006-2007).

It should also be noted that the above-captioned case is barred by the Foreign Sovereign Immunities Act of 1976 (as amended), 28 U.S.C. § 1602 *et seq*., because the International Court of Justice is part of the United Nations.  *See*, *e.g.*, Hirsh v. State of Israel and State of Germany, 962 F. Supp. 377, 1997 U.S.Dist. LEXIS® 4406 (S.D.N.Y. 1997), *affirmed without opinion*, 133 F.3d 907, 1997 U.S.App. LEXIS® 36435, 1997 WESTLAW® (2nd Cir., December 31, 1997), *cert. denied sub nomine*, Berkowitz v. Israel, 523 U.S. 1062, 140 L.Ed.2d 651, 118 S.Ct. 1392, 1998 U.S. LEXIS® 2359 (1998).  Furthermore, the Alien Tort Statute, 28 U.S.C. § 1350, does not provide a basis for the exercise of jurisdiction over a foreign sovereign.

Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 102 L.Ed.2d 818, 109 S.Ct. 683, 1989 U.S. LEXIS® 581 (1989)(generally, foreign nations are immune from suit in the United States for non-commercial, "public" acts).

Moreover, no state or federal court can issue process against the United Nations and any of its component agencies or bodies by virtue of the location of the United Nations Headquarters in New York City. *See* Curran v. City of New York, 191 Misc. 229, 77 N.Y.S.2d 206 (Supreme Court, Queens County, 1947)(International Organizations Immunities Act precludes suits against the United Nations; grant of public lands in New York City to the United Nations and exempting such lands from taxation were valid), *affirmed*, 275 A.D. 784, 88 N.Y.2d 924 (App.Div. 1949); and Bert B. Lockwood, The United Nations Charter and United States Civil Rights Litigation: 1946, 1955, 69 Iowa L. Rev. 901 (May 1984)(discussing U.N. "Headquarters Agreement" [22 U.S.C. § 287] between United States and the United Nations), which cites, *inter alia*, Comment, The United Nations Under American Municipal Law: A Preliminary Assessment, 77 Yale L. J. 778 (1946), and Ling, A Comparative Study of the Privileges and Immunities of the United Nations

Member Representatives and Officials with the Traditional Privileges and Immunities of Diplomatic Agents, 33 Washington & Lee L. Rev. 91 (1976).

Insofar as the plaintiff is complaining about the foreign policy of the United States, this case is subject to summary dismissal under the "political question" doctrine.  Under the "political question" doctrine, the United States District Court for the District of South Carolina cannot address the plaintiff's claims relating to an alliance or alliances of the United States, its foreign policy toward other nations and international organizations, or matters handled by the United Nations Security Council or the International Court of Justice.  Goldwater v. Carter, 444 U.S. 996, 1002-1006 (1979).  The "political question" doctrine discountenances judicial interference with certain types of cases involving the other branches of the Government of the United States.  Baker v. Carr, 369 U.S. 186, 211 (1962).  *See also* Dellums v. Bush, 752 F. Supp. 1141, 1990 U.S.Dist. LEXIS® 16611 (D.D.C. 1990); and Eckert International v. Government of the Sovereign Democratic Republic of Fiji, 834 F. Supp. 167, 171, 1993 U.S.Dist. LEXIS® 13604 (E.D.Va. 1993)(purpose of "political question" doctrine is "to prevent judicial pronouncements that would disrupt this country's foreign relations"), *affirmed*, Eckert International v. Government of the Sovereign Democratic Republic of

Fiji, 32 F.3d 77, 1994 U.S.App. LEXIS® 20704 (4th Cir. 1994). *Cf*. Flast v. Cohen, 392 U.S. 83, 97 (1968)(federal judicial power usually limited to disputes capable of being resolved through judicial process); and FCC v. Pacifica Foundation, 438 U.S. 726, 735 (1978)("[F]ederal courts have never been empowered to issue advisory opinions.").

## *Recommendation*

Accordingly, it is recommended that the District Court summarily dismiss the above-captioned case *without prejudice* and without issuance and service of process. *See* Denton v. Hernandez, supra; Neitzke v. Williams, supra; Haines v. Kerner, supra; Brown v. Briscoe, 998 F.2d 201, 202-204 & n. * (4th Cir. 1993), *replacing* unpublished opinion originally tabled at 993 F.2d 1535 (4th Cir. 1993); Boyce v. Alizaduh, supra; Todd v. Baskerville, supra, 712 F.2d at 74; and 28 U.S.C. § 1915(e)(2)(B)[essentially a redesignation of "old" 1915(d)]. *See also* In Re Prison Litigation Reform Act, 105 F.3d 1131, 1134, 1997 U.S.App. LEXIS® 1763 (6th Cir. 1997)(pleadings by non-prisoners should also be screened); and Fitzgerald v. First East Seventh Street Tenants Corp., 221 F.3d 362, 363-364, 2000

11

U.S.App. LEXIS® 18180 (2nd Cir. 2000)("District courts . . . are . . . capable of determining when an action is frivolous.  Indeed, as courts of first instance, district courts are especially likely to be exposed to frivolous actions, and thus have an even greater need for inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources."). The plaintiff's attention is directed to the Notice on the next page.


February 1, 2007                         s/William M. Catoe
Greenville, South Carolina               United States Magistrate Judge

## Notice of Right to File Objections to Report and Recommendation

The plaintiff is advised that he may file specific written objections to this Report and Recommendation with the District Court Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** In the absence of a timely filed objection, a district court judge need not conduct a *de novo* review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

## Larry W. Propes, Clerk
## United States District Court
## Post Office Box 10768
## Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in the waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).